James **CLARK**, Petitioner,

v.

**PENNSYLVANIA STATE POLICE,** Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 3, 1999.

Decided Oct. 17, 2000.

James Clark, petitioner pro se.

Joanna N. Reynolds, Harrisburg, for respondent.

BEFORE: DOYLE, President Judge, COLINS, Judge, LEADBETTER, Judge.

DOYLE, President Judge.

James Clark (Clark) petitions this Court for review of an order of the Administrative Law Judge (ALJ) denying relief to Clark, regarding a challenge to the accuracy of his criminal history record, pursuant to Sections 9101–9183 of the Criminal History Record Information Act (Act), 18 Pa. C.S. §§ 9101–9183.

On December 8, 1973, Clark was arrested and later pled guilty, as an adult, to Unlawful Restraint, Criminal Conspiracy and Criminal Attempted Rape.[1] On February 2, 1998, Clark requested a review of his criminal history record pursuant to the Act, alleging that his 1973 arrest occurred when he was a juvenile. Clark maintains, therefore, that his record, with respect to that arrest and conviction, should be expunged. The Pennsylvania State Police (PSP), the respondent in this matter, contends that the record is accurate, and, therefore, correction and/or expungement is not warranted.

The criminal history records of individuals arrested and convicted in Pennsylvania are maintained by the PSP at their headquarters in Harrisburg, on a computerized central register known as the central repository. Pursuant to the Act, an individual may view his or her criminal record to

---

1. Clark pled guilty in 1974 to the above listed crimes.

determine if the information maintained in the central repository is accurate. Section 9151 of the Act provides:

**§ 9151. Right to access and review**

(a) **General rule.**—Any individual or his legal representative has the right to review, challenge, correct and appeal the accuracy and completeness of his criminal history record information.

(b) **Prisoners.**—Persons incarcerated in correctional facilities and institutions may authorize a correctional employee to obtain a copy of their criminal history record information for the purpose of review, challenge and appeal.

18 Pa.C.S. § 9151.

Section 9152(c) of the Act states, in pertinent part: "[t]he individual may challenge the accuracy of his or her criminal history record information by specifying which portion of the record is incorrect and what the correct version should be." 18 Pa.C.S. § 9152(c).

Once an individual challenges the accuracy of his or her criminal history record information, the burden is upon the criminal justice agency maintaining the records to prove the accuracy of the record. Section 9152(d) of the Act states, in pertinent part, "[a]ll criminal justice agencies shall have 60 days to conduct a review of any challenge and **shall have the burden of proving the accuracy** of the record." 18 Pa.C.S. § 9152(d) (emphasis added).

If the challenge is ruled "valid" by the criminal justice agency, the appropriate officials must ensure that, *inter alia,* the record information is corrected. 18 Pa. C.S. § 9152(d)(1)–(4). If, however, the challenge is ruled "invalid," the individual may file an appeal with the Attorney General within 30 days of notification. 18 Pa.C.S. § 9152(e)(1). The Attorney General has the authority to conduct an administrative hearing in accordance with the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, 701–714, and that decision may be appealed to this Court. 18 Pa.C.S. § 9152(e)(3).

In the present case, Clark challenged the accuracy of his criminal history record information, and asked for the expungement of those records, alleging that the 1973 arrest and subsequent conviction occurred when he was a juvenile. The PSP, which is the criminal justice agency that maintains Clark's criminal history record, reviewed the conviction data and determined that the conviction data was accurately recorded, and ruled that Clark's challenge was invalid. Clark, thereafter, filed an appeal with the Attorney General, and, pursuant to Section 9152(e)(2) of the Act, an administrative hearing was conducted at the State Correctional Institution—Graterford on February 23, 1999.

On May 28, 1999, an Administrative Law Judge issued a decision and order denying Clark's appeal. The ALJ essentially issued a two-pronged decision. First, the ALJ noted that there exists no dispute that Clark was in fact convicted as an adult of the crimes set forth in the criminal history record. Clark does not maintain that the substance of the record is inaccurate, only that his date of birth was in error and because he was a juvenile when he was convicted, and not an adult, the conviction should be expunged. The ALJ concluded that, since the conviction data maintained by the central repository was accurate as to Clark's arrest and conviction, the decision of the PSP in refusing to expunge the record was correct.

Second, the ALJ addressed Clark's allegation that his birth date, as indicated in the record, was inaccurate. The ALJ noted that, even if Clark's birth date was wrong as recorded, the most he could hope for was the correction of his birth date in the criminal history record and not the expungement of the entire record of the 1973 arrest and subsequent conviction. The ALJ indicated that individuals have many opportunities throughout the criminal justice system to raise issues of their juvenile status so that accurate reporting of arrests and convictions to the central

repository can occur. The ALJ ultimately ruled that Clark failed to present reliable evidence that his date of birth was inaccurately reported to the central repository and denied Clark's appeal. Clark then appealed to this Court.[2]

■ We first address Clark's contention that the 1973 arrest and subsequent conviction should be expunged from his criminal history record because his birth date listed on the record was inaccurate. We would first observe, however, that we are in agreement with the ALJ that, even if his birth date as maintained by the central repository is inaccurate, Clark would not be entitled to expungement of the record. First, there is no dispute that the record accurately reflects Clark's 1973 arrest and subsequent conviction. To order expungement of this conviction would only thwart the purpose of the criminal history record information and mislead law enforcement officials as to Clark's criminal activities. Clark cannot utilize the Act as a means to attack collaterally his valid 1973 arrest and subsequent conviction. Second, Clark does not qualify, under the Act, for expungement of his criminal history record information. Section 9122 of the Act provides, in pertinent part:

### § 9122. Expungement

(a) **Specific proceedings**—Criminal history record information shall be expunged in a specific proceeding when:

(1) No disposition has been received or, upon request for criminal history record information, no disposition has been recorded in the repository within 18 months after the date of arrest and the court of proper jurisdiction certifies to the director of the repository that no disposition is available and no action is pending. Expungement shall not occur until the certification from the court is

received and the director of the repository authorizes such expungement; or

(2) A court order requires that such nonconviction data be expunged.

(b) **Generally**—Criminal History record information may be expunged when:

(1) An individual who is the subject of the information reaches 70 years of age and has been free of arrest or prosecution for ten years following final release from confinement or supervision; or

(2) An individual who is the subject of the information has been dead for three years.

18 Pa.C.S. § 9122(a) and (b). It is clear that Clark does not qualify for expungement based on any of the above criteria set forth in the Act.

We next turn to the issue of whether Clark's birth date listed on his criminal history record with respect to his 1973 arrest and conviction is, in fact, inaccurate. If Clark's birth date was improperly recorded, it must be corrected pursuant to Section 9152 of the Act. At the hearing, the PSP presented Clark's fingerprint cards that it received from the Philadelphia Police Department. The fingerprint cards list Clark's birth date as April 20, 1954, which would have made him 19 years old at the time of his 1973 arrest. The PSP maintains that Clark essentially acknowledged that he was 19 years old because Clark signed the fingerprint cards which included his birth date.

■ For his part, at the hearing, Clark presented the opinion of the Third Circuit Court of Appeals in *Clark v. Commonwealth of Pennsylvania*, 892 F.2d 1142 (3rd Cir.1989), which held that Clark's 1974 conviction could not be utilized in determining a sentence on a 1979 crime, because the common pleas court judge who heard the 1974 case did not determine

---

**2.** This Court's standard of review of administrative agency determinations is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *York Excavating Co., Inc. v. Pennsylvania Prevailing Wage Appeals Bd.,* 663 A.2d 840 (Pa. Cmwlth.1995).

whether Clark was eligible for juvenile certification. Clark maintains that this opinion proves that he was a juvenile at the time of the 1973 arrest. Clark's argument has no merit. Clark did not raise the issue of his alleged juvenile status at the time of his 1973 arrest, nor did he appeal his conviction on those grounds. Instead, the *Clark* case merely holds that Clark's 1974 conviction cannot be utilized in determining a sentence on a later crime. The Third Circuit did not vacate the 1974 conviction, nor did it have authority to do so because Clark's 1974 conviction was final. His juvenile status was never at issue during the pre-trial, trial and post-trial stage, and Clark never appealed his conviction. Therefore, Clark's reliance on the Third Circuit's opinion is misplaced.

■ At the conclusion of the ALJ's hearing, Clark was allowed to submit a certified copy of his birth certificate from the Department of Vital Statistics within 60 days. Instead, Clark submitted a notarized **photocopy** of his birth certificate indicating his birth date as March 23, 1956, and his original certificate of baptism,[3] both of which would have made him 17 years old at the time of the 1973 arrest. The ALJ required, however, that a certified copy of his birth certificate be provided in order to ensure the authenticity of the document.

■ It must be noted that the PSP has the burden of proving the accuracy of Clark's criminal history record information pursuant to Section 9152 of the Act. We

acknowledge that the PSP complied with the Act by introducing Clark's fingerprint cards from his 1973 arrest. We are perplexed, however, as to why the PSP did not simply obtain a certified copy of Clark's birth certificate on its own, especially in view of the authority granted to it under Sections 804 and 806 of the Vital Statistics Law of 1953, Act of June 29, 1953, P.L. 304, *as amended,* 35 P.S. § 450.804 and § 450.806.[4] In addition, Section 810 of the Vital Statistics Law provides that a certified copy of a record shall constitute prima facie evidence of its contents. 35 P.S. § 450.810.

In any event, before us we have the fingerprint cards presented by the PSP, a photocopy of Clark's certified birth certificate and his original certificate of baptism, none of which are sufficient to establish Clark's actual birth date. We believe that there is a serious question as to Clark's actual date of birth. We recognize that Clark has given, at least, six different birth dates to law enforcement authorities throughout the years and that it would be beneficial to everyone involved to determine Clark's actual birth date.

Therefore, we will remand this case to the ALJ to reopen the record and allow Clark to rebut the PSP's prima facie case and provide the ALJ with a **certified copy** of his birth certificate from the Department of Vital Statistics in order to determine his actual date of birth.

Affirmed in part, Vacated in part, and case Remanded.

3. We must note that it is settled in this state that baptismal certificates are admissible to prove the fact and date of baptism, but not to prove the birth date of the individual. *District of Columbia's Appeal,* 343 Pa. 65, 21 A.2d 883 (1941).

4. Section 804 provides:
Except for records described in sections eight hundred two [relating to marriage registration and court report records] and eight hundred three [relating to disclosure of illegitimacy of birth] of this act, the department shall issue certified copies of or disclose a vital statistics record or part

thereof if an officer of the department designated by the Secretary of Health finds that the applicant therefor has a direct interest in the content of the record and that the information contained therein is necessary for the determination of personal or property rights.
35 P.S. § 450.804. Section 806 further exemplifies that "[t]he department may disclose information or data from vital statistics records to federal, state or municipal agencies of government which request such information or data in the interest of conduct of official duty." 35 P.S. § 450.806.

## ORDER

**NOW,** October 17, 2000, the order of the Administrative Law Judge (ALJ) in the above-captioned matter is hereby affirmed to the extent that it denied James Clark's request for the expungement of the record of Clark's 1973 arrest and subsequent conviction. The ALJ's order is vacated to the extent that it denied Clark the opportunity to correct the birth date on his criminal history record. This case is remanded to the ALJ to reopen the record and allow Clark to submit a certified copy of his birth certificate within 60 days from the date of this order. The ALJ shall render a new decision in light of this evidence and, if Clark fails to comply with this order, the ALJ shall dismiss the case.

Jurisdiction relinquished.