Gregory DUNBAR, Petitioner

v.

**PENNSYLVANIA STATE POLICE,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2006.

Decided July 7, 2006.

Gregory Dunbar, petitioner, pro se.

Tara L. Patterson, Harrisburg, for respondent.

PER CURIAM.

Gregory Dunbar, *pro se*, petitions for review of a July 15, 2005 order of an Administrative Law Judge (ALJ) with the Office of Attorney General (OAG). The ALJ denied Dunbar's appeal of a decision by the Pennsylvania State Police (State Police) invalidating his challenge to the accuracy of his criminal history record maintained by the State Police pursuant to the Criminal History Record Information Act (CHRIA), 18 Pa.C.S. §§ 9101–9183. The question presented is whether the Department of Corrections (DOC) is the proper party, rather than the State Police, to defend Dunbar's challenge to the accuracy of his criminal history record in the proceedings before the ALJ.

In 2002 Dunbar challenged the accuracy of his criminal history record pursuant to Section 9151 of CHRIA, 18 Pa.C.S. § 9151, which provides as follows:

(a) **General rule.**—Any individual or his legal representative has the right to review, challenge, correct and appeal the

accuracy and completeness of his criminal history record information.

(b) **Prisoners.**—Persons incarcerated in correctional facilities and institutions may authorize a correctional employee to obtain a copy of their criminal history record information for the purpose of review, challenge and appeal.

Dunbar alleged that his criminal sentence records for certain convictions were incorrect based on "public fraud" stemming from an illegal arrest in April 1985 that led to convictions for, among other offenses, attempted murder, rape, burglary, robbery, terroristic threats, simple assault and possessing instruments of crime.

On January 23, 2003, the State Police invalidated Dunbar's challenge based upon a review of Dunbar's conviction data and court records from the central repository maintained by the State Police and upon its determination that Dunbar's data was correct. In February 2004 Dunbar filed a petition for mandamus relief with this Court seeking an order directing the State Police to correct his criminal record. On April 27, 2004, while his mandamus petition was pending, Dunbar completed an inmate's request to a unit manager, to which he attached his county sentencing sheets, alleging inaccuracies in his aggregated sentence for criminal offenses relat-

ing to bill of information # 2436, which imposed a sentence of ten to twenty years; bill of information # 2434, which imposed a sentence of ten to twenty years to run consecutively to # 2436; and bill of information # 2435, which imposed a sentence of ten to twenty years to run concurrently. Dunbar alleged that his aggregated sentence should be ten to twenty years, but the unit manager informed Dunbar that his sentence was properly aggregated as twenty to forty years.

On May 6, 2004, Dunbar filed an inmate grievance with DOC, which reviewed the criminal records and also determined that there was no error in the computation of the aggregated sentence. On June 4, 2004, Dunbar filed a *pro se* appeal with OAG under Section 9152(e) of CHRIA, 18 Pa.C.S. § 9152(e), alleging that DOC refused to correct its records containing his aggregated sentence. On June 17, 2004, OAG informed Dunbar by letter that he must first challenge the accuracy of his criminal history record with the State Police.

On October 5, 2004, the Court sustained preliminary objections filed by the State Police and dismissed Dunbar's mandamus petition, stating that he failed to exhaust administrative remedies set forth in Section 9152 of CHRIA, 18 Pa.C.S. § 9152,[1]

1. Section 9152 provides the procedure for challenges to criminal history record information, including appeals of challenges deemed invalid:

(c) **Challenge of accuracy.**—The individual may challenge the accuracy of his or her criminal history record information by specifying which portion of the record is incorrect and what the correct version should be. Failure to challenge any portion of the record in existence at that time will place the burden of proving the inaccuracy of any part subsequently challenged upon the individual. Information subsequently added to such record shall also be subject to review, challenge, correction or appeal.

(d) **Review of challenge.**—All criminal justice agencies shall have 60 days to conduct a review of any challenge and shall have the burden of proving the accuracy of the record. If the challenge is deemed valid, the appropriate officials must ensure that:
(1) The criminal history record information is corrected.
. . .
(e) **Appeals.**—
(1) If the challenge is ruled invalid, an individual has the right to appeal the decision to the Attorney General within 30 days of notification of the decision by the criminal justice agency.

and that he failed to state a cause of action to warrant mandamus relief. On January 1, 2005, Dunbar filed his second *pro se* appeal with OAG emphasizing that his appeal was from the determination of DOC, which is a criminal justice agency under Section 9102 of CHRIA, 18 Pa.C.S. § 9102. A hearing was held before the ALJ on June 14, 2005, at which Ashley Caruso, clerical supervisor for the State Police, and Thomas Rowlands, records supervisor at Graterford SCI, testified that the State Police criminal history records and documents maintained by DOC relating to the computation of Dunbar's sentences are accurate. The State Police introduced fingerprint cards that corresponded with Dunbar's arrest and the official copy of court commitment documents, which showed that the length of Dunbar's incarceration was two concurrent sentences of ten to twenty years and one consecutive sentence of ten to twenty years.

■ On July 15, 2005, the ALJ entered an order denying Dunbar's appeal. The ALJ determined that the State Police was the proper party to oppose Dunbar's challenge to the accuracy of his criminal records and that he failed to present suffi-cient evidence to support a reversal of the January 2003 decision of the State Police. The ALJ stated that the limited purpose of Dunbar's appeal was to determine the accuracy of his criminal history record as it exists within the criminal justice system. The ALJ concluded that the jurisdiction of OAG is statutorily limited to determining the validity of records maintained by the State Police in the central repository, and he noted that the accuracy of records in the central repository is dependent upon the reporting of many agencies. Based on the testimony and documentary evidence, including the sentencing sheets and court commitment documents, the ALJ determined that the records maintained by State Police are accurate and need not be corrected.[2]

■ Citing *Feigley v. Department of Corrections*, 731 A.2d 220 (Pa.Cmwlth. 1999), Dunbar contends that he has a due process right to an appeal hearing and that under Section 9151(b) of CHRIA, 18 Pa. C.S. § 9151(b), he has the right to have a proper party present at the hearing to defend its interests.[3] Dunbar claims that he was denied due process because DOC, as the agency authorized to enforce and to

(2) The Attorney General shall have the authority to conduct administrative appeal hearings in accordance with the Administrative Agency Law.

(3) The decision of the Attorney General may be appealed to the Commonwealth Court by an aggrieved individual.

2. The Court's review of an order of an ALJ of the Office of Attorney General relating to CHRIA is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Clark v. Pennsylvania State Police*, 760 A.2d 1202 (Pa.Cmwlth.2000).

3. In *Feigley* the petitioner questioned the accuracy of his prison records by completing an inmate's request to a unit manager, who in-formed the petitioner that his allegations lacked merit. The petitioner filed a challenge to the accuracy of his records with DOC pursuant to Section 9152(c) of CHRIA and an appeal with OAG pursuant to Section 9152(e). OAG did not respond, and the petitioner filed a petition for mandamus in the original jurisdiction of this Court requesting an order requiring DOC to review and correct the records and requiring OAG to establish rules and regulations and to entertain the appeal. The Court granted the preliminary objections filed by DOC and OAG because no Section 9152 violation occurred as DOC had properly and timely considered the petitioner's claims, and OAG had established rules and regulations and had assembled documents and records and entertained the appeal. The holding in *Feigley* provides scant support for the position advanced by Dunbar in this matter.

interpret sentencing orders, was not a party to the proceedings. He asserts that the State Police is not the proper party to defend against the challenge because it is responsible, *inter alia*, for collecting fingerprint cards and maintaining criminal arrest histories. *See Wagaman v. Attorney General*, 872 A.2d 244 (Pa.Cmwlth. 2005) (holding that a proper party must have responsibility to administer or to enforce the law).

The State Police points out that pursuant to Section 9102 of CHRIA, 18 Pa.C.S. § 9102, it is responsible for the "collection, compilation, maintenance and dissemination of criminal history record information." It cites *Allegheny Sportsmen's League v. Ridge*, 790 A.2d 350, 355 (Pa. Cmwlth.2002), *aff'd sub nom. Allegheny County Sportsmen's League v. Rendell*, 580 Pa. 149, 860 A.2d 10 (2004), where this Court stated that "the interest in enforcing and defending the act in question belongs to the government official who implements the law." The State Police indicates that it is the proper party to oppose any challenges to the accuracy of a criminal history record and that Dunbar's appeal was a challenge to the accuracy of his criminal history record under Section 9151. Also, substantial evidence offered at the hearing supports the ALJ's determination that Dunbar's criminal record history at the central repository is accurate.

The Court concludes that the ALJ was correct in determining that the State Police is the proper party to defend challenges to the accuracy of criminal history

records pursuant to CHRIA. *See Clark v. Pennsylvania State Police*, 760 A.2d 1202 (Pa.Cmwlth.2000) (noting that the State Police has the burden of proving the accuracy of criminal history record information under Section 9152 of the act). The ALJ concluded that Dunbar's criminal history record is accurate based upon the testimony of the State Police witness responsible for calculating sentences at Graterford SCI, who reviewed Dunbar's file and confirmed the determination by DOC that Dunbar's sentence had been properly computed as twenty to forty years of incarceration.[4] Because the proper party defended Dunbar's challenge to the accuracy of his criminal record, there was no violation of his due process rights. Inasmuch as the ALJ committed no error in ruling that the criminal history records maintained by the State Police for Dunbar are accurate, the ALJ's order is affirmed.

### ORDER

**AND NOW,** this 7th day of July, 2006, the July 15, 2005 order of the Administrative Law Judge with the Office of Attorney General is affirmed.

4. This Court determined in a per curiam order that Dunbar failed to state a claim that DOC improperly aggregated Dunbar's sentences to a term of twenty to forty years or that DOC improperly refused to correct its records. *Dunbar v. Department of Corrections* (Pa.Cmwlth., No. 411 M.D.2004, filed August 26, 2004). The State Police indicated in its brief that DOC, not the State Police, is responsible for calculating minimum and maximum terms of the prisoners committed to DOC's jurisdiction. *See Gillespie v. Department of Corrections* 106 Pa.Cmwlth. 500, 527 A.2d 1061 (1987). Therefore, a prisoner's challenge to the accuracy of the end date of his sentence must be defended by DOC inasmuch as the State Police is not responsible for calculating sentences.